## Case No. 10,549.

### OPEN BOAT.

[1 Ware (128) 124.] [1]

District Court, D. Maine. Dec. Term, 1827.[2]

NAVIGATION LAWS — TRADE WITH BRITISH PROVINCES IN AMERICA—ACT OF 1820.

1. The navigation laws of the United States, of April 18, 1818 [3 Stat. 432], and of May 15, 1820 [Id. 602], and of March 1, 1823 [Id. 740], do not render unlawful the exportation of goods of the growth and produce of the United States, to the British North American provinces in any other than British vessels.

2. The object of these laws is to countervail the navigation laws of Great Britain which close the ports of the provinces against vessels of the United States, by interdicting the trade in British vessels,—leaving it open to all other vessels.

3. The act of 1820, closing the ports of the United States against British vessels arriving from the colonies, does not extend to small boats used for the conveyance of passengers.

This is the case of an open boat and lading, seized by the collector of Passamaquoddy, on her passage from Eastport to St. Andrews, in the province of New Brunswick. The boat was owned by persons who are natural born subjects of Great Britain, but who for several years had resided and had their domicil at Eastport, though they have never been naturalized in the United States. There was evidence that the boat had for a considerable time been employed in carrying on trade between Eastport and St. Andrews, and her cargo, when she was seized, consisted exclusively of merchandise the growth and produce of the United States. The libel contained two allegations, on which a forfeiture was claimed: 1st. That the boat was owned, wholly or in part, by subjects of the king of Great Britain, and had arrived from some port or place in the province of New Brunswick, in violation of the act of May 15, 1820. 2d. That sundry goods, wares, and merchandise of the growth and produce of the United States, were shipped and water-borne in said boat, on the waters of the bay of Passamaquoddy, for the purpose of being exported to some port in the province of New Brunswick, the said boat not being a ship or vessel of the United States.

Dist. Atty. Shepley, for the United States.
C. S. Daveis, for claimant.

WARE, District Judge. I am unable to see how a decree of condemnation can be sustained by the second allegation of the libel, even admitting the facts to be sufficiently proved. It is framed upon the idea that the exportation of the produce of the United States to the province of New Brunswick in any other than vessels of the United States, is prohibited by our laws. I know of no act so universal in its prohibition; nor does it appear to me that any such intention on the part of the legislature can be inferred from the general spirit and scope of our navigation laws. The general policy of these laws is to favor the shipping interest of our own country, or rather to countervail the exclusive and monopolizing policy of other countries. The act of April 18, 1818, prohibits the importation of goods from any foreign port or place in any other vessel than one of the United States, or one owned by subjects or citizens of the country of which the goods are the growth or manufacture, or from which they can be or most usually are shipped for transportation. But the operation of this act is confined to the vessels of those nations which have adopted similar regulations in relation to vessels of the United States, and the act is entirely silent on the subject of the export trade, leaving that perfectly free. The act of May 15, 1820, closes the ports of this country against all British vessels arriving from any port in a British colony or territory which by the ordinary laws of trade and navigation are closed against vessels of the United States, and it requires of British vessels which have entered and taken cargoes for exportation, a bond that the goods shall not be landed at any British colonial port which by the ordinary laws of trade are closed against vessels of this country; but it contains no clause restricting the free exportation of goods in any other than British owned vessels. The supplementary act of March 1, 1823, closes the ports of the United States against all British vessels arriving from any port in the British North American provinces, West Indies, and certain islands in the Atlantic Ocean, named in the act, and requires a bond of British vessels taking cargoes in this country, that they shall not be landed in any port of any of the colonies named or described in the act. But there is no clause in this act restricting the free exportation of any merchandise from this country in any other than British vessels. The obvious policy of these acts is to put an end to the trade in British vessels, between this country and the colonial ports from which our vessels are excluded. The object of the British laws was to exclude our vessels from this trade, and confine it to their own. Ours are clearly retaliatory, and are intended, not to put an end to the trade altogether, but to exclude British vessels from it, so long as the ports are closed by British laws against our ships, but our laws leave the trade free to our own vessels or the vessels of any other nation except those of Britain. The counsel for the libellants has argued that it was the intention of these acts of congress to establish a non-intercourse between this country and all the British colonial ports which are closed against the vessels of this country. That such was the effect of our laws connected with those of Great Britain, is very evident. The British laws interdicted the trade in all except their own vessels, and

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

[2] [Affirmed in Case No. 15,967.]

our laws met them by an interdict of the trade in British vessels. The act of 1823, which opens the trade to British vessels coming from the free ports, restricts the export trade in their vessels to the free ports, but it contains no restrictions on the export trade in any other vessels. It does indeed satisfactorily appear, and it is not denied, that the lading of this boat was "shipped and water-borne for the purpose of being exported to some port in the province of New Brunswick." It is equally certain, whatever may be the character, description, or ownership of this boat, that she is not technically a ship or vessel of the United States, as vessels can only have that character when they have the documents required by our laws. The difficulty is, that when the matter of the allegation is proved, it does not constitute an offence which draws after it the penalty of forfeiture.

The remaining allegation presents a question of more difficulty. In this, the ownership of the boat is alleged to be British, and that she had arrived at Eastport from some port or place in the province of New Brunswick. This clearly works a forfeiture under the act of May 15, 1820, since that act has been revived by the president's proclamation of the 17th of March last. This renders all British vessels liable to forfeiture which shall enter or attempt to enter any port of the United States, coming from New Brunswick, or any of the colonies mentioned in the first section of the act. There was, indeed, no precise or particular proof that this boat had come from New Brunswick and entered any port of the United States, at any particular time. But there was proof that her constant employment had been, for a considerable length of time, in carrying on a trade or intercourse between St. Andrews and Eastport, and this testimony the claimant did not attempt either to contradict or explain. It was satisfactorily proved, also, that the boat belonged to persons who are natural born subjects of the king of Great Britain, who have not been naturalized in this country, but who are residents and have had a bona fide domicil for several years at Eastport. It is quite clear that persons of this description cannot be the owners of registered or licensed shipping of the United States. The registry and coasting act requires an oath, before papers can be issued for any vessel, that the ownership is exclusively in American citizens. and the forfeiture immediately attaches on the false swearing for the purpose of obtaining a register or license for any vessel in which a foreigner has an interest. The difficulty in this case lies in another direction. This is a boat which might be employed in certain trade without taking out papers from the custom-house. The last section of the coasting act provides that the provisions of that act shall not extend to any boat or lighter without a deck, or if having a deck, without masts, employed exclusively in the

harbor of any city or town. I know of no law making it penal for a foreigner, domiciled in the United States, to be the owner of such craft, or subjecting it to forfeiture when so owned or employed in any way in which such a boat may be employed when owned by a citizen. This boat is proved by the witnesses for the libellant to be under five tons burden.

But though it be admitted that such a boat as this is not liable to forfeiture when owned by a foreigner domiciled in the United States, and employed as a pleasure boat, or in the trade of a harbor, it is contended that under this allegation she is liable to forfeiture by the express words of the act of May 15, 1820, § 1. It is conceded that the language of the act is strong and explicit. "The ports of the United States shall be and remain closed against any vessel owned wholly or in part by any subjects of his Britannic majesty, arriving from any port or place in Lower Canada, New Brunswick, &c." And it applies the penalty of forfeiture to any such vessel that shall enter or attempt to enter any of the ports of the United States. There is no doubt, within the meaning of the revenue and navigation laws of the United States, that the ownership of this vessel was British. It is argued by the counsel for the claimant that the word vessel in this act is not used in its largest signification, as comprehending every kind of vehicle for water transportation, but is restricted to vessels of that class and description which are entitled to be invested with a national character by receiving the usual documentary evidence of that character. But in the view which I take of the case, it is unnecessary for me to go into a full consideration of this argument. My opinion proceeds upon a narrower ground. It is that the act does not, upon a reasonable construction, embrace such a case as that set forth in this allegation of the libel. The boat, in this allegation, is not charged with being engaged in trade. The allegation is simply that she arrived from New Brunswick. If the owner had arrived in her, simply on a visit across the bay, or if she had been employed as a ferry-boat, in carrying passengers across the river, the allegation would have been in the precise form as the one in this libel; nor can a decree of forfeiture be sustained on any principle that would not equally apply to these cases. This would be giving the act an operation beyond what could have been within the intention of the legislators, and beyond what is required by the policy of the act, as this would go to put an end to all intercourse and communication between the inhabitants on opposite sides of the bay and river, there being no communication but by water.

The decree, therefore, will be for the restoration of the goods.

[On appeal to the circuit court the decree of this court was affirmed. Case No. 15,967. See, also, Id. 15,968.]